## APPEAL OF FRANCES J. EATON.

Docket No. 5614.    Decided October 19, 1926.

*T. Coleman Andrews, C. P. A.,* for the petitioner.
*Thos. P. Dudley, Jr., Esq.,* for the Commissioner.

Deficiencies in income tax of $133.90 for 1919 and $165.45 for 1920, arising from the Commissioner's disallowance of petitioner's depletion deductions on limestone.

FINDINGS OF FACT.

Petitioner is the owner of an undivided one-sixth interest in a limestone property located at Marblehead, Ottawa County, Ohio. The property is operated by The Kelley Island Lime & Transport Co. under a lease dated February 15, 1907, for a term of 20 years, by the terms of which the lessee paid a royalty of 4 cents for each ton removed.

On March 1, 1913, the property contained 9,689,406 tons of unquarried limestone. In 1919 the number of tons removed was 847,407, from which petitioner received $5,656.04 as her share of the royalty. In 1920 the number of tons removed was 756,176, from which petitioner received $5,041.17 as her share of the royalty.

In 1919 the Commissioner, before an engineering investigation of the property in question had been made, fixed a depletion rate of 3½ cents per ton for the interests of some of the other owners.

On May 27, 1907, a deed was given of four parcels of land in the vicinity, consisting of 5, 6, 3, and 0.68 acres, or a total of 14.68 acres, from Patrick Doner to The Kelley Island Lime & Transport Co. for a named consideration of $23,000. Upwards of 12 acres of this property were limestone. The practice in quarrying this limestone is to quarry only to a depth of 20 feet and to figure 166 pounds to a cubic foot of stone, or about 72,200 tons to an acre.

One James, who was the owner of an interest in the property in question and represented several other owners, filed with the Commissioner on Form F, called "Schedules for Substantiation of Valuation, Depletion, and Depreciation Inorganic Nonmetallic Mineral Properties," the statement that prior to March 1, 1913, he estimated that upwards of 3,000,000 tons had been removed from the property, and the following quantities thereafter:

| | | | |
|---|---|---|---|
| 1913 | 934,396 | 1917 | 723,820 |
| 1914 | 976,005 | 1918 | 914,212 |
| 1915 | 487,757 | 1919 | 843,407 |
| 1916 | 668,214 | 1920 | 756,126 |

The Kelley Company had operated the property for many years prior to 1907.

The Commissioner computed the depletion rate by finding the present worth on March 1, 1913, of the agreed royalty rate over an assumed life of the quarry of 20 years and applying this to the 1913 content of the quarry. The depletion rate thus allowed is 1.76 cents per ton.

OPINION.

STERNHAGEN: The petitioner attacks the Commissioner's use of Hoskold's formula in determining the discount value of the agreed royalties. She urges that the Commissioner was not justified in extending the probable life of the quarry to 20 years, based upon a spreading of the prior removal of 3,000,000 tons over the period of six years subsequent to February, 1907. But the petitioner proves nothing better. On March 1, 1913, so far as the evidence shows, the only experience upon which a valuation could be based was that 3,000,000 tons had been removed over a period of more than six years, thus giving a maximum annual average of 500,000 tons. If anyone could have prognosticated a greater output, it does not appear from this record. It can not be doubted that the prospect of 4 cents a ton sometime in the future is worth something less than that at present. The old adage has it that the ratio is a bird in the hand to two in the bush. The Commissioner applied Hoskold's formula to the data available, and upon the present record we are not convinced this was in error.

*Judgment will be entered for Commissioner.*